SOMMERVILLE, J.
Plaintiff, in her individual capacity and as tutrix of her four minor children, appeals from an adverse judgment, rejecting her demand for damages against defendant because of the death of her husband and the father of their children.
The husband of the plaintiff was 59 years. *159 of age at the time of his death, was in the employ of the defendant, and was engaged to do ordinary labor around a sawmill owned by the defendant. Iiis principal occupation was to gather chips around the yard, and, when the mill was not in operation, to wheel the sawdust from under said mill, and to fill up the holes in and around the place. Plaintiff alleges that, while thus engaged, her husband was called by Rufus Taylor, the foreman of the mill belonging to defendant, to come under the mill, and to assist him in lacing a belt which had become loose, and that, while thus engaged, he was caught in the belt and killed almost instantly. She charges fault and neglect on the part of the defendant and his employs in ordering the deceased to work in a dangerous place, well knowing that he was inexperienced, and that he could not take care of himself properly, and to do work which he had not been engaged to perform.
Defendant answered, denying all fault and neglect on his part. He admitted the employment of the deceased, and his death at the time and place stated in the petition of plaintiff. I-Ie further answered that the deceased was — ■
“repeatedly warned not to work under the mill or near the machinery while it was being operated ; that defendant himself, and his employes, had constantly warned the deceased time and again as to the danger of going under the mill; * * * that the said Rufus Taylor named in paragraph 7 (by plaintiff as the foreman of the defendant at the time of the accident) was not at the time in the employ of your respondent, nor was he working for respondent; that the mill was in charge of another foreman, and not Taylor. Respondent shows that the said Rufus Taylor had previously worked for your respondent, but had applied for a ten days’ leave of absence, and that at the time of the accident the said Rufus Taylor was not acting in the capacity of foreman, or in any other capacity as employé of your respondent; that if the said Taylor called at the mill on the date alleged by plaintiff, it was not at the solicitation of, nor was he under the employment of, your respondent; that if the said Taylor requested the said deceased to perform any act such as that recited in paragraph 6, that he did so of his own volition and against the expressed instructions and wishes of your respondent; and that the said deceased well knew that he was violating the instructions of respondent when he attempted to perform any work or give any assistance in or around or with the machinery of the mill,” etc.
The evidence makes it quite clear that Rufus Taylor was present on the day of the accident, and that he called the deceased to him under the mill and ordered him to assist him (Taylor) in lacing a broken belt, while the machinery was in operation.
Defendant appeared as a witness in his own behalf, and testified that at the time of the accident Rufus Taylor was not foreman, and that he had been off duty on a leave of absence; but the record fails to show that the deceased was apprised of the fact, if it was a fact, that Taylor had been off on a leave of absence for ten days, and that the ten days had not expired on May 3, 1913, when the accident occurred. The deceased, therefore, had every reason to believe that Taylor was foreman in charge of the mill; he (Taylor) was present, and was engaged in his duties about the mill; and it was the duty of the deceased to obey the orders of Taylor, as his superior.
Besides, the evidence does not sustain the allegation that the deceased had been forbidden by the defendant and his employes to go under the mill while the machinery was in motion. On his examination in chief asi a witness, defendant nullified the allegation to that effect by saying that he had instructed the deceased not to go under the mill while it was in operation and in the absence of Taylor.
In answer to the question:
“Had you ever ordered old man Monteleone not to go under the mill?”
• — he answered:
“Yes, sir; Mr. Firmin was with me when I told him that, and I asked Mr. Firmin to see that he didn’t go under.
“Q. Where was the old man when he got killed?
*161 “A. He was -working under the mill. I didn’t consider it safe for such an old man to go under the mill when Mr. Taylor was not there, and that is the reason why I told him not to go there any more.
“Q. Why did you not consider it safe for him to go there while Taylor was away?
' “A. Because the old man was not familar with machinery and he could have entangled himself in the belt or wheels. Mr. Taylor was an experienced man and he could have kept an eye on him.
“Before Taylor left on his vacation, the old man’s duty was to wheel sawdust from under the mill, and when Mr. Taylor left, I told the old man not to go under there unless the mill was not running. * * *
“Q. You told both Mr. Aymond (another laborer) and Mr. Monteleone to stay from under the mill ?
“A. Yes, sir; when Mr. Taylor was there, it was all right, but when he was away, I didn’t want them to go there.
“Q. Why did you want them to keep away?
“A. Because they were both old men and it was dangerous for such old men to get under there. While Taylor was there, it was all right, because he could keep an eye on them. * * *
“Q. In other words, these two old men were expected to handle belts under the direction of Taylor?
“A. No, sir; they worked among the belts.
“Q. I want to get it clear. At the time Taylor left to take his lay off these two old. men were working there?
“A. Yes, sir.
“Q. You felt, when you put a new man there, that something could happen to these two old men if they worked with an inexperienced man that would not happen if they worked with a man of experience?
“A. Yes, sir; it was safer for those two old men to work there with an experienced man, so I told them not to go under the mill when Taylor was off.
“Q. You didn’t want them to handle belts with an inexperienced man, and to work under the mill while there was an inexperienced man?
“A. Yes; that’s it.”
It thus appears that the instructions given by the defendant to the deceased were to the effect that he was not to go under the mill while it was in operation, “when Taylor was off.” On the day of the accident, Taylor had come to the mill, and, as testified to by two witnesses, had given orders to one of the workmen in the mill. It is further shown that he called the deceased to him, under the mill, to assist in lacing the belt, which work he was engaged in at the time. So that the deceased was not disobeying the orders of his employer when he went under the mill while it was in operation, as Taylor was there. The latter had called him, as his superior, to do the thing which defendant says was very dangerous, and which should not have been done in the absence of Taylor.
Defendant says that it was the duty of the two old mten referred to to work “among the belts”; so that, the deceased was actually doing the work assigned him when he was killed. The occupation was dangerous, as testified to by defendant; and there was no evidence offered to prove the alleged contributory negligence on the part of the deceased.
The evidence further shows that the deceased was an ignorant man, uninstructed in the use of machinery, and unfamiliar with the same.
¡There was evident fault on the part of the defendant in putting the deceased to work in a dangerous place, without instructions as to the dangers of the occupation and how to take care of himself while engaged under the mill.
The deceased was almost instantly killed, and plaintiff and her minor children have been damaged because of his death, and plaintiff is entitled to judgment. She will be allowed $2,500, and $2,500 will be allowed to the children, because of the great loss sustained by them in the death of their father.
It is therefore ordered that the judgment appealed from be annulled, avoided, and reversed ; and it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiff in her individual capacity for the sum of $2,500, and as the natural tutrix of her four minor children, for their use and benefit, for the additional sum of $2,500, with interest on both of said sums at the rate of 5 per cent, per annum from the date of this judgment, with costs in both courts.
PROVOSTY, J„ dissents.